# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| CHERYL KOWALCZYK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 03 C 8335 |
| v. | ) | |
| | ) | Magistrate Judge Ian H. Levin |
| WALGREEN COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Cheryl Kowalczyk ("Plaintiff") seeks recovery against Defendant Walgreen Co. (hereinafter "Defendant") for unlawful discriminatory employment practices in violation of the Age Discrimination in Employment Act (hereinafter "ADEA"), 29 U.S.C. § 626; Family and Medical Leave Act (hereinafter "FMLA"), 29 U.S.C. § 2617; and American with Disabilities Act (hereinafter "ADA"), 42 U.S.C. § 12117. The parties are before the Court on Defendant's motion for summary judgment in the cause. For the reasons set forth below, the Court grants Defendant's motion.

## BACKGROUND FACTS

Plaintiff began working for Defendant in 1988. (Def.'s LR56.1(a)(3) St. ¶ 5.) In 2002, the relevant time period in this case, Plaintiff worked full-time at Defendant's store located at 5600 Fullerton Avenue in Chicago, Illinois (the "Fullerton Store") where she held the position of Head Cosmetician. (*Id.* ¶ 6-7.) As Head Cosmetician, she was *inter alia* responsible for ordering merchandise, organizing merchandise in a stockroom, transferring merchandise from a stockroom to the cosmetics area, stocking merchandise in the cosmetics area, cleaning store shelves, creating price and merchandise signs for the cosmetics area, operating a cash register and assisting

customers.  (*Id.* ¶ 8.)

Plaintiff's position required her to stand and walk in order to perform each of her job duties and, moreover, she had to be on her feet for each eight-hour shift in order to perform the essential functions of her position.  (Def.'s LR56.1(a)(3) St. ¶¶ 9-10.)

In September of 2002, Plaintiff underwent routine surgery to correct varicose veins in her legs.  (Def.'s LR56.1(a)(3) St. ¶13.) Plaintiff claimed her varicose veins substantially limited her ability to walk and caused pain in her legs and swelling in her ankles.  (*Id.* ¶ 14, Pl.'s Dep. at 33-36.)

Because she had surgery, Plaintiff applied for short-term disability benefits through Defendant's employee disability benefit plan and initially received benefits for the period covering September 16, 2002 through October 15, 2002. (Def.'s LR56.1(a)(3) St. ¶¶ 25, 27, 40.)  Her short-term disability benefits were subsequently extended through November 6, 2002. (*Id.* ¶¶ 47, 60.)

On or about December 5, 2002, Plaintiff contacted Keippel regarding taking leave under the Family and Medical Leave Act (hereinafter "FMLA") in order to care for her husband who suffers from Hepatitis C and other medical conditions. (Def.'s LR56.1(a)(3) St. ¶ 64, Pl.'s Resp. to Def.'s LR56.1(a)(3) St. ¶ 77.) Keippel referred Plaintiff to Darlene Biedron (hereinafter "Biedron"), Defendant's Bookkeeper, who informed Plaintiff that she did not know which forms to print off of the computer. (Def.'s LR56.1(a)(3) St. ¶ 78.)  Plaintiff informed Biedron that she would find out which form numbers were needed. (*Id.* ¶ 79.)

By December 6, 2002, Plaintiff had exhausted her leave; however, she was not physically able to perform her job duties as Head Cosmetician until approximately three weeks later (around January 1, 2003).  (Def.'s LR56.1(a)(3) St. ¶ 61.)

At some point after December 17, 2002, Plaintiff contacted an individual at Defendant's

corporate office and obtained the form numbers of the forms needed to apply for FMLA leave. (Def.'s LR56.1(a)(3) St.¶ 80.)  Plaintiff believes she might have again spoken with Biedron about FMLA paperwork on December 29, 2002. (Pl.'s Resp. to Def.'s LR56.1(a)(3) St. 81, Pl.'s Dep. at 144.) While disputed between the parties, Plaintiff claims she made numerous telephone calls to the Fullerton Store and Defendant's corporate office from mid to late December of 2002 through January of 2003 regarding FMLA paperwork. (Pl.'s Resp. to Def.'s LR56.1(a)(3) St. 82, Def.'s Ex. 20.)            Plaintiff was released by her treating physician to return to work on January 1, 2003. (Pl.'s Resp. at 1, Def.'s LR56.1(a)(3) St. ¶ 22, Pl.'s LR56.1(b)(3)(B) St. ¶¶ B19-B20.)

On January 15, 2003, Plaintiff received a Request for Leave form (number 1372)[1], a Certification of Healthcare Provider form (number 768) and another document entitled "Additional Information" from the Fullerton Store which explained what Plaintiff needed to do in order to request a leave of absence.  (Def.'s LR56.1(a)(3) St. ¶ 85.)  The "Additional Information" document provided information on disability, family and personal leave. (*Id.*) Plaintiff, however, never completed the Request for Leave or Certification of Healthcare Provider forms.[2]  (*Id.* ¶ 88.)

During the relevant time period, Dan Keippel (hereinafter "Keippel") was the Store Manager at the Fullerton Store. (Keippel Aff. ¶ 3.) Keippel was transferred from the Fullerton Store to another

---

[1]The Request for Leave form (number 1372) has boxes designating unpaid disability leave, family leave and personal leave that can be checked to indicate the type of leave that is being requested. (Def.'s LR56.1(a)(3) St. ¶ 86.)

[2]In Plaintiff's affidavit, she states that "When I finally received the FMLA forms, I could not fill them out immediately because I had to wait for my husband's next [Veteran's Administration (hereinafter "VA")] appointment. At the VA appointment, my husband was told that the VA would not fill out forms and that he would have to see a family physician.  Before my husband could be seen by our family physician, we received notice that I had been terminated."  (Pl.'s Aff. ¶ 8.)

store in January of 2003. (*Id.* ¶ 10.)

Plaintiff's employment with the Fullerton Store was terminated on February 3, 2003. (Def.'s LR56.1(a)(3) St. ¶ 106.) While the reason for Plaintiff's termination is disputed by the parties, Defendant alleges that Plaintiff was automatically terminated by Defendant's payroll computer program (hereinafter "Payroll Program") because she was not on an approved leave of absence after November 6, 2002 and she had not had a pay transaction for more than forty-five days.[3] (*Id.* ¶¶ 104-06.) Plaintiff, on the other hand, avers that Defendant purposefully neither granted her a leave of absence nor scheduled her to work so that she would not have a pay transaction for more than forty-five days which would result in her automatic termination. (Pl.'s Resp. at 2.) Plaintiff thus conclusorily asserts that contrary to Defendant's explanation for her termination, she was unlawfully terminated on the basis of her disability and age and, moreover, because she inquired about taking a leave of absence to care for her husband. (*Id.* at 2-3, Def.'s LR56.1(a)(3) St. ¶ 2.)

## LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party had produced evidence to show that it is entitled to summary judgment, the party seeking to avoid such judgment must affirmatively demonstrate that a genuine

---

[3]Defendant's Payroll Program will automatically terminate an employee if certain criteria are met. The Payroll Program will terminate an employee, during the first week of every month, if he or she has not had a pay transaction in his or her "store location" within the last forty-five days. (Def.'s LR56.1(a)(3) St. ¶ 102.)

issue of material fact remains for trial. *LINC v. Fin. Corp. v. Onwuteaka*, 129 F.3d 917, 920 (7th Cir. 1997).

In deciding a motion for summary judgment, a court must "review the record in the light most favorable to the nonmoving party and to draw all reasonable inferences in that party's favor." *Vanasco v. National-Louis Univ.*, 137 F.3d 962, 964 (7th Cir. 1998). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Nevertheless, the nonmovant may not rest upon mere allegations, but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See also Linc*, 129 F.3d at 920. A genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, 106 S.Ct. 2505 or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

This standard is applied with added rigor in employment discrimination cases, where issues of intent and credibility often dominate. *See Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1038 (7th Cir. 1993). "[S]ummary judgment is improper in a discrimination case where a material issue involves any weighing of conflicting indications of motive and intent." *Stumph v. Thomas & Skinner, Inc.*, 770 F.2d 93, 97 (7th Cir. 1985)(*citing Kephart v. Inst. of Gas Tech.*, 630 F.2d 1217, 1218 (7th Cir. 1980)). Finally, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Freeman v. Madison Metro.*

*Sch. Dist.*, 2000 WL 1640952, *3 (7ᵗʰ Cir. Nov. 2, 2000)(*quoting Anderson*, 477 U.S. at 255, 106 S.Ct. 2505).

**ANALYSIS**

Defendant brings the subject motion for summary judgment averring that there is no genuine issue of material fact(s) with regard to Plaintiff's claims under the ADEA, FMLA, and ADA. For the reasons set forth below, the Court agrees and finds there are no genuine issue(s) of material fact with regard to Plaintiff's claims.

## I.    AGE DISCRIMINATION IN EMPLOYMENT ACT CLAIM

In order to succeed on a discrimination claim under the ADEA, a plaintiff must show that her termination or other adverse employment action would not have occurred "but for" her employer's motive to discriminate against her because of her age. *Taylor v. Canteen Corp.,* 69 F.3d 773, 779 (7ᵗʰ Cir. 1995); *Gehring v. Case Corp.,* 43 F.3d 340, 344 (7ᵗʰ Cir. 1994)(the ultimate question in an age discrimination case is "whether the same events would have transpired if the employee had been younger than 40 and everything else had been the same"), *cert. denied,* 515 U.S. 1159, 115 S.Ct. 2612, 132 L.Ed.2d 855 (1995).

### A.    Direct Method of Proof

A plaintiff may prove discrimination under the ADEA by presenting either direct or circumstantial evidence that an employer's decision to take an adverse job action against her was motivated by an impermissible purpose; such as, her age.[4]  *Cerutti v. BASF Corp.,* 349 F.3d 1055, 1061 (7ᵗʰ Cir. 2003)(*citing Cianci v. Pettibone Corp.,* 152 F.3d 723, 727 (7ᵗʰ Cir. 1998)). Direct

---

[4]Courts employ essentially the same analytical framework to employment discrimination cases whether they are brought under the ADEA, Title VII, or § 1983.  *Cerutti v. BASF Corp.,* 349 F.3d 1055, 1060 n.4 (7ᵗʰ Cir. 2003).

evidence of discrimination "is evidence that, if believed by the trier of fact, would prove discriminatory conduct on the part of the employer without reliance on inference or presumption." *Cerutti,* 349 F.3d at 1061 (*citing Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003)); *see also Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 347 (7th Cir. 1997). In short, "[d]irect evidence essentially requires an admission by the decision-maker that his actions were based on the prohibited animus." *Radue v. Kimberly-Clark Corp.,* 219 F.3d 612, 616 (7th Cir. 2000)(*citing Troupe v. May Dep't Stores Co.,* 20 F.3d 734, 736 (7th Cir. 1994)). Thus, a proffer of direct evidence "must not only speak directly to the issue of discriminatory intent, it must also relate to the specific employment decision in question." *Cowan v. Glenbrook Security Services, Inc.,* 123 F.3d 438, 443 (7th Cir. 1997)(*quoting Randle v. LaSalle Telecommunications, Inc.,* 876 F.2d 563, 569 (7th Cir. 1989)).

"Direct evidence would include statements by the employer to the employee that s/he was being fired because of age." *Maxfield v. Sinclair Int'l,* 766 F.2d 788, 791 (3rd Cir. 1985)(citation omitted); *see also Gorence v. Eagle Food Centers, Inc.*, 242 F.3d 759, 762 (7th Cir. 2001)("I fired Judy because she was an old woman" is an example of a statement which proves intentional discrimination). "[I]nappropriate but isolated comments that amount to no more than 'stray remarks' in the workplace will not do." *Venters v. City of Delphi*, 123 F.3d 956, 973 (7th Cir. 1997)(*citing Randle,* 876 F.2d at 569)); *see also Cowan,* 123 F.3d at 444 ("'stray remarks in the work place, while perhaps probative of sexual harassment [here race], . . . cannot justify requiring the employer to prove that its hiring or firing or promotion decisions were based on legitimate criteria.'")(*quoting Price Waterhouse v. Hopkins,* 490 U.S. 228, 277, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)). Rather, "[t]o be probative of discrimination, isolated comments must be contemporaneous with the discharge

or causally related to the discharge decision making process." *Geier v. Medtronic, Inc.,* 99 F.3d 238, 242 (7th Cir. 1996)(*citing Price Waterhouse,* 490 U.S. at 277, 109 S.Ct. 1775, 104 L.Ed.2d 268); *see also Fuka v. Thomson Consumer Electronics*, 82 F.3d 1397, 1403 (7th Cir. 1996)("before seemingly stray workplace remarks will qualify as direct evidence of discrimination, the plaintiff must show that the remarks were related to the employment decision in question.")(internal citation and quotation marks omitted); *Bahl v. Royal Indemnity Co.,* 115 F.3d 1283, 1293 (7th Cir. 1997)("[C]omments cannot defeat summary judgment in favor of an employer unless they are both proximate and related to the employment decision in question.") This type of evidence is rare. *Rogers,* 320 F.3d at 753; *Volovsek v. Wisconsin Dep't of Agriculture, Trade and Consumer Protection,* 344 F.3d 680, 689 (7th Cir. 2003).[5]

A plaintiff may also prevail under the direct method of proof by constructing a "convincing mosaic" of circumstantial evidence that allows a jury to infer intentional discrimination on the part of the decisionmaker. *Rhodes v. Illinois Dep't of Transportation,* 359 F.3d 498, 504 (7th Cir. 2004)(*citing Troupe,* 20 F.3d at 737); *Volovsek,* 344 F.3d at 689 (*citing Rogers,* 320 F.3d at 753). The three types of circumstantial evidence include: (1) suspicious timing, ambiguous oral or written statements, behavior toward or comments directed at other employees in the protected group, and other bits and pieces of evidence from which an inference of discriminatory intent might be drawn; (2) evidence, but not necessarily rigorous statistical evidence, that similarly situated employees were treated differently or received systemically better treatment; and (3) evidence that the employee was

---

[5]Other cases also hold that "[r]emarks and other evidence that reflect a propensity by the decisionmaker to evaluate employees based on illegal criteria will suffice as direct evidence of discrimination even if the evidence stops short of a virtual admission of illegality." *Sanghvi v. St. Catherine's Hosp., Inc.,* 258 F.3d 570, 574 (7th Cir. 2001) and cases cited therein.

qualified for the job in question but passed over (or replaced) and the employer's proffered reason for the difference in treatment is a pretext for discrimination. *Troupe,* 20 F.3d at 736. The circumstantial evidence, however, "must point directly to a discriminatory reason for the employer's action" (*Rhodes,* 359 F.3d at 504)(*quoting Adams v. Wal-Mart Stores, Inc.,* 324 F.3d 935, 939 (7th Cir. 2003)) and be "directly related to the employment decision." (*Venturelli v. ARC Community Services, Inc.,* 350 F.3d 592, 602 (7th Cir. 2003)(*quoting Gorence v. Eagle Food Centers, Inc.,* 242 F.3d 759, 762 (7th Cir. 2001)).

Defendant contends that Plaintiff has failed to proffer any direct evidence of age discrimination. (Def.'s Mem. at 2; Def.'s Reply at 1-8.) Accordingly, Defendant avers that Plaintiff is subject to the indirect burden-shifting analysis. (Def.'s Mem. at 2.)

Plaintiff, on the other hand, avers that there is direct evidence in this case which establishes age discrimination on the part of Defendant. (Pl.'s Resp. at 2.) Specifically, Plaintiff contends that her deposition testimony and affidavit statement that Keippel told her that she "might be getting a little too old for [her] job," he "might put [her] down [] somewhere else" and he expected "changes [would be] made when he goes on vacation" constitute direct evidence of age discrimination. (*Id.*, Pl.'s Dep. at 179-80, Pl.'s Aff. ¶ 16.) In her deposition testimony, Plaintiff testified as follows:

> Q:     . . . . Can you explain what [Keippel] was yelling at you about?
> A:     Stockroom wasn't cleaned up. He said it looked like a mess. I have to get the stuff out – out onto the shelves when there was no room to put stuff on there because it was already full.
> Q:     Okay. Anything else?
> A:     That I was moving too slow. I talked too much.
> Q:     Anything else?
> A:     That he – that I might be getting – that I might be getting a little too old for this job or something, and I might be – that he might put me down to somewhere else when he goes on vacation and comes back. There's going to be changes made when he goes on vacation.
> Q:     When did that conversation occur?

A:      That happened before I got my surgery.

Q:      Okay.  When?

A:      End of August [2002] because he went on vacation in September [2002].

Q:      Okay.  And what did he say to you specifically?

A:      Sort of that I was moving too slow, that – that I wasn't fast enough and am I getting too old for the job.

Q:      So he asked you whether you were getting too old for the job?

A:      No. He says, "Maybe you're getting too old for the job, and you're not moving fast enough. Come on. You've got to get this stuff out, out to the floor.  Quit lollygagging."[6]  (Pl.'s Dep. at 179-80.)

The Court finds Plaintiff's deposition testimony and affidavit statement do not constitute direct evidence of age discrimination. First, Plaintiff's proffered evidence cannot be viewed as constituting an admission on the part of Defendant that Plaintiff's termination was based on her age, or in other words, was premised on a discriminatory animus. *See e.g., Radue,* 219 F.3d at 616 ("[d]irect evidence essentially requires an admission by the decision-maker that his actions were based on the prohibited animus.")(citation omitted); *see also Maxfield,* 766 F.2d at 791 ("Direct evidence would include statements by the employer to the employee that s/he was being fired because of age.")(citation omitted); *Gorence v. Eagle Food Centers, Inc.*, 242 F.3d at 762 ("I fired Judy because she was an old woman" is an example of a statement which proves intentional discrimination).[7]  Rather, Plaintiff's proffered evidence, if believed, would result in a trier of fact making an impermissible inference or presumption that Plaintiff was terminated on the basis of her age. *Cerutti,* 349 F.3d at 1061 (citation omitted). Accordingly, Plaintiff has failed to present the Court with direct evidence of discriminatory intent or animus on the part of Defendant that resulted

---

[6]Keippel denies making these statements.  (Keippel Dep. at 35.)

[7]Thus, while the parties dispute whether Keippel was involved in the decision to terminate Plaintiff, the dispute is inapposite because the evidence presented by Plaintiff does not rise to the level of an admission by Defendant that Plaintiff was terminated on the basis of her age.  (Pl.'s Resp. to Def.'s LR56.1(a)(3) St. ¶ 110.)

in her termination.

In any event, Plaintiff has failed to show that the alleged discriminatory statements were temporally proximate and related to Defendant's employment decision to terminate her. *See e.g., Bahl*, 115 F.3d at 1293 ("[C]omments cannot defeat summary judgment in favor of an employer unless they are both proximate and related to the employment decision in question.") Herein, Plaintiff claims Keippel made the discriminatory comments regarding her age in August of 2002; however, she was not terminated from her position until February 3, 2003. Given that there is approximately a seven month period of time between when the alleged statements were made and Plaintiff's termination, the Court finds that the alleged statements were not contemporaneous with Plaintiff's termination. *See e.g., Kennedy v. Schoenberg, Fisher & Newman, Ltd.,* 140 F.3d 716, 724 (7th Cir. 1998)(finding that a comment made at least five months before the plaintiff's termination was not temporally related to her discharge); *Markel v. Bd. of Regents of the Univ. of Wisconsin System,* 276 F.3d 906, 910 (7th Cir. 2002)(holding that statements made two months before the plaintiff's termination were not contemporaneous to the adverse employment action); *Gleason v. Mesirow Fin., Inc.,* 118 F.3d 1134, 1140 (7th Cir. 1997)(holding that statements made "as much as three months" before the plaintiff's termination were not contemporaneous). Therefore, the Court finds the alleged discriminatory statements are merely stray or isolated comments that are unrelated to Defendant's decision to terminate Plaintiff and thus they cannot be viewed as constituting direct evidence of age discrimination on the part of Defendant.[8] *See e.g., Fuka v. Thomson Consumer*

---

[8]Plaintiff cites two cases in support of her assertion that Keippel's alleged statements constitute direct evidence of age discrimination. These cases, however, are distinguishable. In *Collins v. Outboard Marine Corp.,* 808 F.Supp. 590, 592, 595 (N.D. Ill. 1992), the district court denied the defendant's motion for summary judgment because the plaintiff alleged that the

(continued...)

*Electronics*, 82 F.3d 1397, 1403 (7th Cir. 1996)("before seemingly stray workplace remarks will qualify as direct evidence of discrimination, the plaintiff must show that the remarks were related to the employment decision in question.")(internal citation and quotation marks omitted); *Geier v. Medtronic, Inc.,* 99 F.3d 238, 242 (7th Cir. 1996("[t]o be probative of discrimination, isolated comments must be contemporaneous with the discharge or causally related to the discharge decision making process.")(citation omitted).

The Court also finds that alleged discriminatory statements do not constitute circumstantial evidence of age discrimination because they do not "point directly to a discriminatory reason" for Defendant's decision to terminate Plaintiff (*Rhodes*, 359 F.3d at 504) and they are not "directly related to the employment decision" at issue. *Venturelli,* 350 F.3d at 602. Accordingly, the statements Plaintiff alleges Keippel made in August of 2002 in reference to her age do not constitute circumstantial evidence of discriminatory intent on the part of Defendant.

The Court finds that Plaintiff's alleged direct evidence is not sufficient to raise a genuine issue of material fact with regard to discriminatory intent on the part of Defendant. Thus, when viewed in the light most favorable to Plaintiff, the alleged statements Plaintiff attributes to Keippel do not rise to the level of an admission by Defendant that Plaintiff's termination was based on her age and, in any event, the subject statements do not satisfy the temporal or causal criteria required by case law. Accordingly, the alleged statements cannot be viewed as either direct or circumstantial

---

[8](...continued)
decisionmaker expressly stated at the time of the plaintiff's discharge that the plaintiff was selected for termination because he was "retired, on pension and older" than the employee who had been selected to fill the new corporate marketing vice president position. In *Maldonado-Maldonado v. Pantasia Mfg. Corp.,* 956 F.Supp.73, 80 (D. P.R.1997), the district court noted, in *dicta,* that multiple statements made by the decisionmaker that he was planning to "get rid of the older employees to create a new team" constituted direct evidence of age discrimination.

evidence of discriminatory intent or animus on the part of Defendant.

## B. Indirect Method of Proof

In the absence of direct or circumstantial evidence of discriminatory intent, a plaintiff may show discriminatory intent indirectly using the framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The *McDonnell Douglas* indirect method of proof requires that the plaintiff first establish a prima facie case of discrimination. *McDonnell Douglas Corp.*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668. To establish a prima facie case of age discrimination under the indirect method, a plaintiff must show that: (1) she was a member of a protected class (over forty years of age); (2) she was meeting her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees who were substantially younger than her were treated more favorably. *Franzoni v. Hartmarx Corp.,* 300 F.3d 767, 771-72 (7th Cir. 2002), *Cianci,* 152 F.3d at 728, *Radue,* 219 F.3d at 617.

With regard to an ADEA prima facie case, the Seventh Circuit has stated that "[i]n an attempt to better reach the ultimate question of when, . . . an employee within the protected class has been discharged and replaced, we have required that the employee show only that 'he was performing his job to the employer's legitimate expectations' and that the employer 'hired someone who was substantially younger or other such evidence that indicates that it is more likely than not that his age . . . was the reason for the discharge.'" *Olson v. Northern FS, Inc.*, 387 F.3d 632, 635 (7th Cir. 2004)(*quoting Robin v. Espo Eng'g Corp.,* 200 F.3d 1081, 1089-90 (7th Cir. 2000)); *see also O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 313, 116 S.Ct.1307, 134 L.Ed.2d 433 (1996)("[T]he fact that a replacement is substantially younger than the plaintiff is a far more reliable

indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class.")[9]

Once a plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment decision. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp.*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668; *Steinhauer v. DeGolier,* 359 F.3d 481, 484 (7th Cir. 2004). If the employer provides a legitimate reason for its employment decision, the burden shifts back to the plaintiff to present sufficient evidence to show that the employer's proffered reason is merely a pretext for discrimination. *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089, 67 L.Ed.2d 207; *Vakharia v. Swedish Covenant Hosp.*, 190 F.3d 799, 806-07 (7th Cir. 1999); *Steinhauer,* 359 at 484. The burden of persuasion remains at all times with the plaintiff. *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089, 67 L.Ed.2d 207.

Defendant contends that Plaintiff cannot establish the fourth element of the prima facie case because she cannot show that a substantially younger woman; namely, Angela Garcia (hereinafter "Garcia") is similarly situated. (Def.'s Mem. at 2-3, Def.'s Reply at 8-9.) Defendant further avers that even if Plaintiff can establish a prima facie case of age discrimination, she has failed to produce any evidence that Defendant's reason for terminating her was a pretext for discriminating against her. (Def.'s Mem. at 3-4, Def.'s Reply at 9-12.)

Plaintiff, on the other hand, avers that she can establish a prima facie case of age discrimination because she has satisfied all four elements. (Pl.'s Resp. at 4-5.) Moreover, Plaintiff

---

[9]An ADEA plaintiff who shows that someone "substantially younger" was retained need not prove that the replacement is outside the protected class. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.,* 328 F.3d 309, 321 (7th Cir. 2003).

asserts that the reason for her termination is contested and is a pretext for discriminating against her on the basis of her age. (*Id.* at 5-7.)

The Court initially notes that the parties do not dispute the first three elements of the prima facie case. (Def.'s Mem. at 2-3, Def.'s Reply at 8-9, Pl.'s Mem. at 4-5.) Plaintiff has satisfied these three elements because, at the time of her termination on February 3, 2003, she was 43 years old (Pl.'s Dep. at 10) and there is no evidence to suggest that she was not performing her job satisfactorily.

With regard to the fourth element of the prima facie case, the Court finds that Plaintiff has failed to satisfy this element. Plaintiff avers that Garcia, a cosmetician employed by Defendant during the relevant time, was a similarly situated substantially younger woman who assumed Plaintiff's duties. (Pl.'s Resp. at 4-5.) The problem with Plaintiff's contention is that she attempts to establish Garcia's age based on the inappropriate speculative and guesswork deposition testimony of two of Defendant's employees. (Samojla's Dep. at 24-25, Drabik Dep. at 22-23.) For example, Karen Samojla, one of Defendant's employees conclusorily testified as follows:

> Q.: Are you familiar with Angela Garcia?
> A.: Is she a cosmetician?
> Q.: Yes, she was.
> A.: If there was a cosmetician named Angela, yes.
> Q.: Okay. Do you recall that she took over [Plaintiff's] duties when [Plaintiff] went out with her varicose vein surgery?
> A.: I think she did, yeah.
> Q.: Do you recall approximately how old Angela Garcia was during that period?
> . . . .
> A.: Should I guess? I am going to guess she was about 30. I am not sure.
> Q.: And to the best of your perception, approximately how old was [Plaintiff] at that time?
> . . . .
> A.: I really don't know. She is younger than me, let me put it that way.
> Q.: Between [Plaintiff] and Angela, who would you have thought was older at the time?

. . . .

A.:     Possibly [Plaintiff].  (Samojla's Dep. at 24-25.)

Another one of Defendant's employees, Mary Ann Drabik, provided the following conclusory deposition testimony with respect to Garcia's age:

Q.:     . . . . Are you familiar with Angela Garcia?
A.:     Yes, I remember working with her.
Q.:     Do you recall her taking over [Plaintiff's] duties when [Plaintiff] left due to her varicose veins?
A.:     Yes.
Q.:     Do you recall approximately hold old Angela Garcia was when she took over [Plaintiff's] duties?
A.:     I will say maybe in her early 30s.
Q.:     And approximately how old did you believe [Plaintiff] was at that time?
     . . . .
A.:     I believe when [Plaintiff] was working, she was in her late 30s or early 40s.
Q.:     Would it be fair at any rate to say that Angela Garcia was definitely younger than [Plaintiff]?
     . . . .
A.:     Yes, she was younger.  (Drabik Dep. at 22-23.)

Herein, the deposition testimony of Samojla and Drabik clearly fails to establish Garcia's exact age during the relevant period.  Given that the Court is left to guess as to Garcia's age, Plaintiff has failed to establish a prima facie case of age discrimination because the Court cannot discern whether Garcia meets the ten year difference in age requirement established by the Seventh Circuit.  *See e.g., Cianci,* 152 F.3d at 728 (The Seventh Circuit has "explained that 'substantially younger' requires a ten-year difference in age between the plaintiff and her replacement and that an age disparity of less than ten years is presumptively insubstantial unless the plaintiff 'directs the court to evidence that her employer considered her age to be significant.'")(*quoting Hartley v. Wisconsin Bell, Inc.,* 124 F.3d 887, 893 (7th Cir. 1997)).  Accordingly, Plaintiff's reliance on the speculative deposition testimony of two of Defendant's employees is insufficient to defeat summary judgment. *See e.g., K.I. Morgan Co., Inc. v. Chicago Transit Authority,* 25 F.Supp.2d 886, 891 (N.D.

Ill. 1998)("Plaintiff's only evidence of discriminatory intent by the defendant is the speculative testimony of its own agent . . ."); *see also Patterson v. Chicago Ass'n for Retarded Citizens,* 150 F.3d 719, 724 (7th Cir. 1998)("[A] plaintiff's speculation is not a sufficient defense to a summary judgment motion.")(*quoting Karazanos v. Navistar Int'l Transp. Corp.,* 948 F.2d 332, 337 (7th Cir. 1991)); *Fed. Nat'l Mortgage Ass'n v. Panice,* No. 93 C 7730, 1996 WL 361549, at *3 (N.D. Ill. June 26, 1996)("speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment")(citation omitted).

In addition, Plaintiff has failed to show that she was similarly situated to Garcia. *See e.g., Jordan v. City of Gary, Indiana,* 396 F.3d 825, 835 (7th Cir. 2005)("this court has made it clear that in order to be considered similarly situated an employee must be 'directly comparable in all material respects.'")(*quoting Hudson v. Chicago Transit Auth.,* 375 F.3d 552, 561 (7th Cir. 2004)). "[A] court must look at all relevant factors, the number of which depends on the context of the case." *Patterson v. Avery Dennison Corp.,* 281 F.3d 676, 680 (7th Cir. 2002)(*quoting Radue*, 219 F.3d at 617). Relevant factors include "whether the employees 'dealt with the same supervisor' and were 'subject to the same standards.'" *Id.* at 680 (*quoting Radue*, 219 F.3d at 617-18). The court must also inquire as to "whether the employees had comparable 'experience, education and qualifications,' provided that the employer took these factors into account when making the personnel decision in question." *Id.* (*quoting Radue*, 219 F.3d at 618). Herein, because Plaintiff has provided no facts, other than that Garcia was employed by Defendant as a cosmetician, the Plaintiff has not made a utilizable similarly situated comparison of Plaintiff and Garcia for purposes of analyzing the prima facie case.

Accordingly, the Court finds that Plaintiff has failed to set forth a prima facie case of age

discrimination and Defendant is entitled to summary judgment on Plaintiff's ADEA claim.[10]

## II.     FAMILY AND MEDICAL LEAVE ACT CLAIM

A plaintiff may bring a claim for retaliatory discharge under the FMLA using either the direct method of proof or the indirect burden-shifting framework. *King v. Preferred Technical Group,* 166 F.3d 887, 892 (7th Cir. 1999). Because Plaintiff does not allege that there is any direct evidence indicating she was terminated in violation of the FMLA, the Court will proceed under the indirect burden-shifting method. (Pl.'s Resp. at 7-11.)

Under the indirect burden-shifting method, courts have applied the *McDonnell Douglas* burden-shifting framework to "claims that an employer discriminated against an employee exercising rights guaranteed by the FMLA." *King*, 166 F.3d at 892; *see also Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37,* 260 F.3d 602, 616 (7th Cir. 2001). An FMLA retaliation claim is analyzed in "the same way that we would evaluate a claim of retaliation under other employment statues, such as the ADA or Title VII." *Buie v. Quad/Graphics, Inc.,* 366 F.3d 496, 503 (7th Cir. 2004).

In order to establish a prima facie case for retaliation under the indirect method, a plaintiff must show that: (1) she engaged in statutorily protected activity; (2) she performed her job according to her employer's legitimate expectations; (3) despite her satisfactory job performance, she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated

---

[10]Because Plaintiff has failed to state a prima facie case of age discrimination, the Court does not need to reach the issue of pretext. *See e.g., Cowan v. Glenbrook Sec. Servs., Inc.,* 123 F.3d 438, 445 (7th Cir. 1997)("We need not reach the issue of pretext, as plaintiff has failed to state a *prima facie* case of discriminatory discharge under *McDonnell Douglas*.); *Cianci,* 152 F.3d at 728 ("Because Cianci has failed to make out a prima facie case of age discrimination, we need proceed no further.")(*citing Fisher v. Wayne Dalton Corp.,* 139 F.3d 1137, 1142 (7th Cir. 1998)).

employees who did not engage in statutorily protected activity.[11] *Haywood v. Lucent Technologies, Inc.,* 323 F.3d 524, 531 (7th Cir. 2003); *Hilt-Dyson v. City of Chicago,* 282 F.3d 456, 465 (7th Cir. 2002), *Buie,* 366 F.3d at 503 (*quoting Rogers,* 320 F.3d at 754-55);*see also Stone v. City of Indianapolis Public Utilities Div.,* 281 F.3d 640, 644 (7th Cir. 2002). "Under the indirect method of proof, failure to satisfy any one element of the prima facie case is fatal to an employee's retaliation claim." *Hudson v. Chicago Transit Authority*, 375 F.3d 552, 560 (7th Cir. 2004)(*citing Hilt-Dyson,* 282 F.3d at 465).

After the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the employer's adverse employment action. *King,* 166 F.3d at 892 (citation omitted). "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted" and "drops from the case." *Id.* (*quoting Burdine,* 450 U.S. at 255 & n.10, 101 S.Ct. 1089, 67 L.Ed.2d 207); *see also McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817, 36 L.Ed.2d 668. Next, the plaintiff is given the opportunity to demonstrate that "the proffered reason was not the true reason for the employment decision" and that the employee's participation in the protected activity was the real or actual reason for the employer's adverse employment action. *Id.* (*quoting Burdine,* 450 U.S. at 256, 101 S.Ct. 1089, 67 L.Ed.2d 207). The burden of persuasion remains at all times with the plaintiff. *Id.*

---

[11]The parties incorrectly assert that Plaintiff must prove a causal connection between her protected activity and Defendant's adverse employment action. Although Seventh Circuit precedent formerly required a causal connection, *Stone v. City of Indianapolis Public Utilities Div.,* 281 F.3d 640, 644 (7th Cir. 2002), which was decided under Circuit Rule 40(e), eliminated that requirement from the prima facie case of retaliation brought under the indirect method. *Rogers v. City of Chicago,* 320 F.3d 748, 755-56 (7th Cir. 2003). The plaintiff in *Stone* alleged claims under the American with Disabilities Act (hereinafter "ADA") and Title VII, and not the FMLA. However, as noted above, an FMLA retaliation claim is analyzed in the same way as a retaliation claim under other employment statutes, such as the ADA or Title VII.

Defendant avers that Plaintiff's FMLA claim must be dismissed because she cannot establish a prima facie case of retaliatory discharge. (Def.'s Mem. at 10-14, Def.'s Reply at 12-14.) Defendant further contends that Plaintiff has failed to produce any evidence that its reason for terminating her was a pretext for retaliating against her for inquiring about taking leave under the FMLA. (Def.'s Mem. at 14, Def.'s Reply at 14-15.)

Plaintiff, on the other hand, alleges that Defendant willfully and intentionally discriminated against her by terminating her for inquiring about her rights under the FMLA. (Complt. ¶ 28.) Plaintiff therefore contends that she has made out a prima facie case of retaliatory discharge and, moreover, there is evidence which demonstrates that her termination was a pretext for retaliating against her for asserting her FMLA rights. (Pl.'s Resp. at 7-11.)

The Court finds that Plaintiff has failed to establish the fourth element of a prima facie case of retaliation. Specifically, Plaintiff has produced no evidence whatsoever that she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity under the FMLA. *See e.g, Haywood,* 323 F.3d at 531. Herein, because Plaintiff has failed to identify even one similarly situated employee who was treated more favorably than her with respect to the exercising of her FMLA rights, she cannot establish a prima facie case of retaliatory discharge. *See e.g., Hudson,* 375 F.3d at 560.

Accordingly, the Court finds that Plaintiff has failed to set forth a prima facie case of retaliatory discharge and Defendant is entitled to summary judgment on Plaintiff's FMLA claim.[12]

---

[12]The Court does not need to reach the issue of pretext because Plaintiff has failed to state a prima facie case of retaliatory discharge. *See e.g., Cowan v. Glenbrook Sec. Servs., Inc.,* 123 F.3d 438, 445 (7th Cir. 1997); *Cianci,* 152 F.3d at 728 (*citing Fisher v. Wayne Dalton Corp.,* 139 F.3d 1137, 1142 (7th Cir. 1998)).

**III**.    **AMERICAN WITH DISABILITIES ACT CLAIM**

In its motion, Defendant specifically moved for summary judgment on Plaintiff's ADA claim. (Def.'s Mem. at 4-10.)  Plaintiff, however, has failed to respond to Defendant's argument on that claim. (Pl.'s Resp. at 7.) Accordingly, the Court finds that Plaintiff has abandoned her ADA claim and Defendant is entitled to summary judgment on that claim. *See e.g., Palmer v. Marion County,* 327 F.3d 588, 597-98 (7th Cir. 2003)(deeming plaintiff's negligence claim abandoned because he failed to delineate it either in his district court brief in opposition to summary judgment or in his brief on appeal); *Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999)(stating that arguments not presented to the district court in response to summary judgment motions are waived)(citations omitted); *Bombard v. Fort Wayne Newspapers, Inc.,* 92 F.3d 560, 562 n.2 (7th Cir. 1996)(plaintiff abandoned claim after failing to respond to arguments in defendant's motion for summary judgment); *Livak v. Gary Little Nissan, Inc.,* No. 97 C 6679, 1998 WL 378427, at *9 (N.D. Ill. July 1, 1998)(citing *Bombard* and granting summary judgment for defendant on claim to which plaintiff did not respond); *Gillespie v. City of Indianapolis,* No. IP 98-266-C B/W, 1998 WL 310477, at *13 (S.D. Ind. June 5, 1998)(*citing Bombard* and granting defendants' motion to dismiss claim where plaintiff failed to respond to defendants' arguments); *Brown v. Northern Trust Bank,* No. 95 C 7559, 1997 WL 543098, at *3 (N.D. Ill. Sept. 2, 1997)(citing *Bombard* and deeming claim abandoned and granting defendant's motion for summary judgment on claim to which plaintiff failed to respond); *Oak Brook Hotel Co. v. Teachers Ins. and Annuity Ass'n of Am.,* 846 F.Supp. 634, 641 (N.D. Ill. 1994)(finding plaintiff's failure to defend particular claim in response to defendant's motion for summary judgment resulted in treating that claim as abandoned).

## <u>CONCLUSION</u>[13]

Based on the foregoing, Defendant's motion for summary judgment is granted and the cause is dismissed with prejudice.


**ENTER:**

_____
**IAN H. LEVIN**
**United States Magistrate Judge**


**Dated:  May 17, 2005**

---

[13]In view of the Court's ruling herein, it is deemed unnecessary to consider Plaintiff's and Defendant's other arguments raised herein.